HAROLD KENNEDY
*vs.*
LESTER LACOMBE

Kennebec.   Opinion, February 24, 1965.

*Richard J. Dubord,*
*Robert A. Marden,* for Plaintiff.

*Brown, Wathen and Choate,*
   by *George A. Wathen and*
   *William M. Finn,* for Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, JJ.  MARDEN, J., did not sit.

SULLIVAN, J.   This is a tort action for personal injuries consequential to a collision of motor vehicles.  The plaintiff

who related that he was a passenger in an automobile driven northerly on the divided four lane public highway near Freeport asserted that the defendant had negligently parked the latter's truck illegally and dangerously upon a traveled portion of that highway and thus became the occasion of a collision of the car in which the plaintiff was riding with the defendant's stationary truck and of plaintiff's resultant injuries. Defendant traversed plaintiff's complaint in the main and countered that the plaintiff was the negligent operator of the automobile and not a passenger. A jury trial culminated in a verdict for damages in favor of the plaintiff. Defendant moved that such verdict be set aside and that judgment be entered for him in accordance with his earlier motion made at the close of the evidence for a directed verdict in defendant's favor. The presiding justice directed entry of judgment for the defendant as if defendant's requested verdict had been directed. *M. R. C. P., 50 (b)*. The plaintiff has appealed.

The evidence establishes some unrefuted details. At dusk on March 25, 1958 the defendant drove his truck northerly on Route #95 at a location somewhat less than 3 miles from the center of Brunswick and about 15 miles from Yarmouth. On the median strip dividing the 4 travel lanes of Route #95 into 2 roadways he saw a Chevrolet car stuck fast in the snow. In that vehicle were a young man and 2 boys. Defendant stopped to be helpful. He attached his towing chain to the Chevrolet and dragged the latter on to the double pavement of Route #95 a distance of 100 feet, more or less. The roadway was free of snow and dry. The weather was fair. Defendant and the car's occupants were hoping by traction in gear to start the car's stalled motor. It had become evident from ominous noises that there had developed a mechanical rupture in the car and that continued hauling might be damaging. Defendant drew to the right border of the highway. To his rear he had a view for a distance between 500 and 600 feet and no

traffic was proceeding northerly on the one way division of the route. Defendant entered upon the breakdown strand at his right. He noticed in his mirror that the young man was steering the Chevrolet by the end of defendant's truck body toward the guard rail alongside the highway. Defendant stopped, leaving his truck in gear. It was becoming dark. The lights of the truck and of the Chevrolet were illuminated save for the missing right tail light of the latter. Lights on the truck were blinking at intervals. There were reflectors upon the truck at the back corners on the frame underneath the body. The truck stood partly on the concrete slab and in part on the breakdown area which was 10 or 12 feet wide. The 2 concrete road strips comprising that half of Route #95 were each 12 feet in width. To the left of the truck on the concrete was a clearance of 15 feet. Behind the truck stood the Chevrolet, one half upon the concrete lane and one half upon the breakdown strip leaving a clear passage to its left on the 2 lane travel highway of some 17 feet.

Defendant walked to the rear of his truck and unhooked the towing cable from the Chevrolet. He noticed the Ford car containing the plaintiff coming over the hill some 500 feet to the south or west at considerable speed. Defendant had a flashlight. He walked back of the Chevrolet. He swung the illuminated flashlight to signal, warn or direct the driver of the approaching Ford car. Without slackening its speed or changing its course or leaving its lane the Ford car collided with the left portion of the truck. Some of the right side of the Ford car was sheared off. Plaintiff and a companion became injured.

Defendant had halted his truck some 5 minutes before the collision.

Plaintiff testified that he had no memory of the accident or of events which preceded the collision earlier in the day. His companion in the Ford asserted to the court that plain-

tiff was the operator of the Ford at the time of the accident and was not a passenger.

R. S., 1954, c. 22, § 126 provided in pertinent application here as follows:

"No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any way outside of a business or residence district, when it is practicable to park or leave such vehicle standing off of the paved or improved or main traveled portion of such way; provided in no event shall any person park or leave standing any vehicle, whether attended or unattended, upon any way unless a clear and unobstructed width of not less than 10 feet upon the main traveled portion of said way opposite such standing vehicle shall be left for free passage of other vehicles thereon, nor unless the operator of an approaching vehicle can have a clear view of the way for a distance of 300 feet beyond the parked or standing vehicle, before approaching within 200 feet of such vehicle - - - - "

The parking of the truck by the defendant was the resultant of such factors as the mechanical plight of the disabled Chevrolet and the steering of its youthful operator away from the truck and toward the guard rail. It had become temporarily unpracticable for the defendant to drive his truck completely off the paved highway. A clear and unobstructed width of 15 feet was left opposite the standing truck and upon the concrete travel lane for the free passage of other vehicles. The testimony imparts that a clear view to the rear of the truck for 500 or 600 feet was available to vehicles which might approach from the south or west and photographic exhibits disclose an additional view of more than 300 feet to the north of the truck's position without visual interruption or break. Route #95 was an access controlled highway and was restricted to one way

travel southerly and northerly of the truck's position. There was considerable illumination at the position of the truck and Chevrolet. Defendant with his flashlight aglow forewarned the driver of the approaching Ford and indicated the clear and unobstructed portion of the concrete highway to the truck's left. Some 5 minutes had elapsed between the halting of his truck by the defendant and the disastrous collision.

The accountability for sustaining the preponderant proof of negligence imputable to the defendant as a proximate cause of the plaintiff's injuries rested with the plaintiff. The evidence fails to demonstrate such negligence.

The mandate must be:

*Appeal denied.*